UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                           Chapter 13

Kalid M. Kaid,                                   Case No. 11-68941

              Debtor.                            Hon. Phillip J. Shefferly
_____/

## OPINION SUSTAINING IN PART AND DENYING IN PART
## DEBTOR'S OBJECTION TO PROOF OF CLAIM of FLAGSTAR BANK, FSB

### INTRODUCTION

Flagstar Bank, FSB ("Flagstar") filed a proof of claim in the Debtor's Chapter 13 case in the

amount of $520,160.20. The Debtor filed an objection, first arguing that Flagstar is not the holder

of any claim against the Debtor. In the alternative, the Debtor argues that if Flagstar does hold a

claim against him, the claim should only be allowed in an amount that is substantially less than the

amount set forth in Flagstar's proof of claim. For the reasons set forth in this opinion, the Court

holds that Flagstar does hold a claim against the Debtor, but sustains the Debtor's objection to the

amount of the proof of claim and allows Flagstar's claim in a reduced amount.

### JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

### FACTS

The following facts are undisputed.

Michigan & Lonyo Ultimate Service Center, Inc. ("Michigan & Lonyo") owned and

operated a gas station and service center located at 8258 Michigan Avenue, Detroit, Michigan. On

June 30, 2005, Flagstar made a loan to Michigan & Lonyo in the amount of $807,500.00 ("Michigan & Lonyo Loan"). The Michigan & Lonyo Loan was evidenced by an agreement ("Business Loan Agreement"), a promissory note ("Promissory Note"), a mortgage ("Mortgage") on Michigan & Lonyo's real property ("Michigan Avenue Property"), and various other documents. The Business Loan Agreement also required the execution and delivery of three separate personal guaranties of the loan. Kalid Kaid ("Debtor") signed one of the guaranties ("Guaranty").

When Michigan & Lonyo defaulted on the Promissory Note, Flagstar took a number of actions. On April 7, 2010, Flagstar filed a lawsuit against the Debtor in Wayne County Circuit Court to enforce the Guaranty. While that lawsuit was pending, Flagstar entered into an Agreement of Purchase and Sale of Notes and Loan Documents ("AFT Agreement") on August 12, 2010 pursuant to which Flagstar agreed to sell to AFT Investments, LLC ("AFT") a bundle of various loans that it had made, including the Michigan & Lonyo Loan. The AFT Agreement allocated a specific amount of AFT's purchase price to each loan in the bundle, and also fixed a "Maximum Foreclosure Amount" for each loan. As for the Michigan & Lonyo Loan, the AFT Agreement expressly stated that the loan documents being sold by Flagstar to AFT "specifically exclude" the Debtor's Guaranty of the Michigan & Lonyo Loan. The AFT Agreement further provided that Flagstar "is not selling, assigning or otherwise conveying to [AFT] the right to pursue a deficiency judgment or other claim" against the Debtor under the Guaranty. Three separate amendments to the AFT Agreement were later made by Flagstar and AFT. On December 27, 2010, Flagstar and AFT closed the sale of the loans described in the AFT Agreement. The Michigan & Lonyo Loan, as well as the other loans bundled together in the AFT Agreement, were sold by Flagstar to AFT at the

closing, but Flagstar retained all of its rights against the Debtor under the Guaranty. The Debtor was not a party to the AFT Agreement nor to any of its amendments.

After the AFT Agreement was made on August 12, 2010, but before it closed on December 27, 2010, Flagstar continued to prosecute its lawsuit against the Debtor to enforce the Guaranty. On October 4, 2010, the Wayne County Circuit Court granted Flagstar's motion for summary disposition against the Debtor and granted Flagstar a judgment ("Judgment") against the Debtor in the amount of $830,303.39, plus interest, costs and attorney fees, based upon the Guaranty.

On February 22, 2011, the Debtor filed a motion in the Wayne County Circuit Court to set aside the Judgment. The Debtor's motion asserted that Flagstar's sale of the Michigan & Lonyo Loan to AFT on December 27, 2010 precluded Flagstar from enforcing the Judgment against the Debtor. Specifically, the Debtor argued that a guaranty of a promissory note cannot be separated from the promissory note, and that once a promissory note is assigned, a guaranty of that promissory note passes as a matter of law to the purchaser of the promissory note. As a result, the Debtor argued, when Flagstar sold the Michigan & Lonyo Loan to AFT, the Guaranty necessarily, and by operation of law, followed the Promissory Note into AFT's hands. Therefore, according to the Debtor, Flagstar could no longer enforce the Judgment against the Debtor.

On March 18, 2011, the Wayne County Circuit Court held a hearing on the Debtor's motion to set aside the Judgment. According to the transcript, after hearing arguments from counsel for the Debtor and counsel for Flagstar, the Court denied the Debtor's motion. The Wayne County Circuit Court held that even if the Debtor was correct in arguing that an assignment of a promissory note ordinarily has the effect of assigning a guaranty of that promissory note to the assignee, that

argument did not provide a basis to grant the Debtor any relief from the Judgment, which the court found was properly entered. Although the Wayne County Circuit Court did not find that there was any basis to set aside the Judgment, it did observe at the hearing that Flagstar's separation of the Debtor's Guaranty from the Promissory Note should not enable Flagstar to obtain a double recovery, or to recover more than it was owed on the Promissory Note. No appeal was taken from the decision of the Wayne County Circuit Court to deny the Debtor's motion to set aside the Judgment.

AFT, as the holder of the Promissory Note, then proceeded to foreclose the Mortgage on the Michigan Avenue Property that secured the Promissory Note. On July 27, 2011, a foreclosure sale of the Michigan Avenue Property was conducted. AFT successfully bid $752,527.40 and obtained a sheriff's deed to the Michigan Avenue Property.

On November 8, 2011, the Debtor filed this Chapter 13 case. On January 25, 2012, Flagstar filed a proof of claim in the amount of $520,160.20. Flagstar's proof of claim states that the basis for its claim is "Breach of Guaranty." An addendum attached to Flagstar's proof of claim also states that the proof of claim is based upon the Guaranty. The addendum contains a calculation showing the "total amount of the balance owing" on the Promissory Note in the amount of $520,160.20. Neither the proof of claim nor the addendum mention the Judgment.

On February 22, 2012, the Debtor filed an objection to Flagstar's proof of claim. The objection first argues that Flagstar does not hold the right to enforce the Guaranty because Flagstar sold the Michigan & Lonyo Loan to AFT. The objection next argues that in the event that Flagstar is the holder of a claim against the Debtor based upon the Guaranty, the amount of that claim is much less than the amount set forth in Flagstar's proof of claim because the Debtor is entitled to a credit against the Guaranty for the amount of AFT's bid at the foreclosure sale. Flagstar filed a

-4-

response that argues that the AFT Agreement expressly excluded the Guaranty from the sale of the Michigan & Lonyo Loan to AFT and, therefore, Flagstar is the proper holder of the Guaranty and entitled to enforce it against the Debtor. Further, the response argues that the Debtor is not entitled to a credit on the Guaranty for the amount bid at the foreclosure sale by AFT, but is only entitled at most to a credit for the amount of the purchase price allocated by the AFT Agreement to the Michigan & Lonyo Loan.

On March 27, 2012, the Court held a preliminary hearing on the Debtor's objection to Flagstar's proof of claim. The Court required the Debtor and Flagstar to file briefs setting forth the law in support of their respective positions, set deadlines to file the briefs, and adjourned the hearing on the Debtor's objection to Flagstar's proof of claim to May 8, 2012. The Debtor and Flagstar each timely filed a brief. The Debtor's arguments in his brief were essentially unchanged, albeit more fully developed. Flagstar, on the other hand, raised several new arguments in its brief in addition to those that it previously made. First, although its proof of claim states that it is based on "Breach of Guaranty," Flagstar now argues that it is the Judgment that is the basis for and is dispositive of Flagstar's proof of claim. Flagstar's second new argument is that because the Wayne County Circuit Court denied the Debtor's motion to vacate the Judgment, the Debtor is barred by principles of collateral estoppel and the application of the Rooker-Feldman doctrine from asserting that the Guaranty could not be separated from the Promissory Note. Flagstar's third new argument asserts that the Debtor is estopped from objecting that Flagstar does not hold any claim because the Debtor listed Flagstar as a creditor on his schedules. Flagstar's final new argument is that the Debtor is not entitled to any credit against the Judgment because the Debtor has not made any payments on the

Judgment. At the conclusion of the hearing, the Court took the matter under advisement. The Debtor's objection to Flagstar's proof of claim is now ripe for decision.

<u>**THE CLAIMS ALLOWANCE PROCESS**</u>

Section 502 of the Bankruptcy Code governs the allowance of claims in a bankruptcy case. Under § 502(a), a proof of claim that is filed under § 501 of the Bankruptcy Code is deemed allowed, unless a party in interest objects. Section 502(b) provides that if an objection to a claim is made, the court shall, after notice and a hearing, determine the amount of the claim, and shall allow such claim in such amount except to the extent that one of the grounds for disallowance of the claim under § 502(b)(1) through (9) apply. Although the Debtor's objection to Flagstar's proof of claim does not specifically identify any subsection of 502(b), the Court construes the substance of the Debtor's objection as a § 502(b)(1) objection. Section 502(b)(1) states that the court shall disallow a claim if "such claim is unenforceable against the debtor and property of the estate, under any agreement or applicable law . . . ."

Under Federal Rule of Bankruptcy Procedure 3001(f), a proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim. The procedure for objecting to a proof of claim is set forth in Rule 3007(a). That rule provides that an objection to the allowance of a claim shall be in writing and filed and served at least 30 days prior to a hearing on the objection.

"During the claims allowance process, the burden of proof shifts between the parties. Initially, a creditor bears the burden of establishing its claim." <u>In re Hughes</u>, 313 B.R. 205, 208 (Bankr. E.D. Mich. 2004).

> If a party objects to the claim, the objecting party carries the burden of going forward with evidence to overcome the *prima facie* validity and amount of the claim. If the

objecting party produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of persuasion shifts back to the claimant. The claimant ultimately bears the burden of proving the validity of the claim by a preponderance of the evidence.

Id. at 208-09 (citations omitted) (criticism on other grounds noted in Perron v. eCast Settlement Corp. (In re Perron), 350 B.R. 628 (Table), 2006 WL 2933827 at *3 n.2 (B.A.P. 6th Cir., Oct. 13, 2006)). In this case, Flagstar bears the burden of proving the validity of its claim against the Debtor.

## DISCUSSION

1. Does Flagstar hold a claim against the Debtor?

The Guaranty contains a governing law provision that requires the application of Michigan law to the enforceability of the Guaranty. The Debtor argues that when Flagstar sold the Michigan & Lonyo Loan to AFT under the AFT Agreement, the Guaranty followed the Promissory Note into AFT's hands. As a result, the Debtor argues that Flagstar simply does not hold any claim against the Debtor, and that any claim against the Debtor based upon the Guaranty can only be made by AFT. In support of this argument, the Debtor cites several cases decided by Michigan courts and other state courts. First, the Debtor relies upon Greene v. Bursey, 733 So.2d 1111 (Fla. Dist. Ct. App. 1999). In that case, Greene had guaranteed a promissory note made in March, 1984 by Joli Hospitalities, Inc. to Western World Real Estate, Inc. In April, 1984, Western World assigned its interest in the note to Bursey. When Joli Hospitalities defaulted on the note, Bursey sued Greene on his guaranty. Greene argued that Bursey had no right to enforce the guaranty because there had not been any separate assignment of the guaranty to Bursey. The court disagreed, and held that Western World's assignment of the note to Bursey also operated as an assignment of the guaranty "even though the assignment contained no specific reference to the guaranty." Id. at 1114. As a

-7-

result, Bursey was entitled to enforce the guaranty against Greene, even though he did not hold a separate assignment of it.

There are two problems with the Debtor's reliance upon <u>Greene v. Bursey</u>. First, it applied Florida law, not Michigan law, which the Court is bound to apply in this case. Second, it is factually distinguishable from this case. In <u>Greene</u>, the instrument of assignment was silent about the guaranty. The question there was whether or not an assignment of a promissory note by itself had the effect of also assigning a personal guaranty of that note. Here, the facts are much different. The AFT Agreement specifically excludes the Debtor's Guaranty from the sale of the Promissory Note by Flagstar to AFT. There is nothing in <u>Greene v. Bursey</u> that says that such express contractual provision is not enforceable.

Next, the Debtor urges the Court to follow <u>Damerau v. C.L. Rieckhoff Co., Inc.</u>, 399 N.W.2d 502 (Mich. Ct. App. 1987). In that case, C.L. Rieckhoff Co., Inc. signed a promissory note payable to a trust. At the bottom of the promissory note appeared the words "payment guaranteed" followed by the signature of C.L. Rieckhoff in his individual capacity. The trust later assigned the promissory note to a bank. Despite assigning the promissory note to the bank, the trust brought an action against C.L. Rieckhoff individually to enforce his guaranty. The Michigan Court of Appeals affirmed the trial court's ruling that the assignment of the promissory note to the bank "included the assignment of the right to turn to the guarantor for satisfaction." <u>Id.</u> at 504. The opinion quoted a statement by the trial judge explaining that:

> I don't see how the guarantee—I just don't see how the guarantee can be separated in an assignment from the note that goes with it.
>
> It is my belief that when you assign a note, you assign not only part of the note, but you assign the whole note. And if that note is guaranteed, then you assign that guarantee.

*Id.* In affirming the trial court, the Michigan Court of Appeals in <u>Damerau</u> applied well established principles of construction of contracts and noted that the result in that case turned on construction of the particular assignment before the court and the parties' intent in executing that contract. <u>Id.</u>

While it is true that <u>Damerau</u> did hold that the guaranty in that case was not separated from the promissory note when the promissory note was assigned to the bank, the facts in that case are much different from the facts in the case at bar. First, the guaranty in <u>Damerau</u> was actually written on the promissory note itself, rather than on a separate instrument. Second, <u>Damerau</u> did not involve a contractual provision in an assignment that excluded the guaranty from the assignment of the promissory note. <u>Damerau</u> does not hold that such a contractual provision is unenforceable or that an assignment of a promissory note would necessarily have the effect of assigning a separate guaranty of that promissory note despite an express contractual provision in the assignment to the contrary.

Finally, the Debtor cites <u>Jensen v. Gamble</u>, 157 N.W. 440 (Mich. 1916) in support of his argument that the Guaranty necessarily followed the assignment of the Promissory Note to AFT. However, that case dealt with splitting a single promissory note among three different individuals and the court's analysis in that case relates to whether or not it is permissible to split a cause of action to enforce a promissory note. <u>Jensen</u> has no relevance to the Debtor's objection to Flagstar's proof of claim in this case.

For its part, Flagstar does not provide the Court with any authority one way or the other on whether it is permissible to contractually agree to separate a guaranty from a promissory note by assigning only the promissory note and stating expressly that the guaranty is not assigned. Instead,

-9-

Flagstar notes that the Debtor has already made this very same argument unsuccessfully to the Wayne County Circuit Court when the Debtor filed his motion to vacate the Judgment.

From a review of the cases cited by the Debtor, as well as the Court's own research, it does appear under Michigan law that ordinarily an assignment of a promissory note does have the effect of also assigning a guaranty of that promissory note, even if there is no specific assignment of the guaranty. See Aiton v. Slater, 299 N.W. 149, 153-54 (Mich. 1941) (finding guaranty agreement attached to bond was enforceable by the holder of the bond, and "it was immaterial that the guaranty was not assigned at the same time the notes were, as the assignee had the same rights to subject the securities to payment of the debts as the assignor had"). But that is not the same thing as saying that parties to a sale of a promissory note are prohibited from contractually excluding an assignment of a guaranty of that promissory note from the sale of the note. Neither the Debtor nor Flagstar has cited the Court to any authority holding that it is impermissible or permissible under Michigan law to contract for an assignment of a promissory note and to contract that a guaranty of that promissory note is not included within the assignment. The authorities cited all dealt with the factual situation where either the assignment of the promissory note expressly included a provision assigning a guaranty of that note or the assignment of the promissory note was silent as to what became of a guaranty of that note. That is not the case before the Court.

Absent authority to the contrary, the Court concludes that Flagstar and AFT were not barred under Michigan law from entering into an agreement to assign the Michigan & Lonyo Loan and the Promissory Note, but expressly excluding the Debtor's Guaranty from such assignment. "Michigan courts have long held that guaranty agreements 'are to be construed like other contracts.'" Wells Fargo Bank NA v. MPC Investors, LLC, 705 F. Supp. 2d 728, 735 (E.D. Mich. 2010) (quoting In

-10-

re Handwehr's Estate, 282 N.W. 873, 875 (Mich. 1938)). "[P]arties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." Wilkie v. Auto-Owners Ins. Co., 644 N.W.2d 776, 782 (Mich. 2003) (referring to this as a "bedrock principle of American contract law"). Therefore, the Court rejects the Debtor's argument that the Guaranty is owned by AFT and not by Flagstar. Flagstar is the proper party to enforce the Guaranty as the AFT Agreement makes it clear that the Guaranty was not assigned by Flagstar to AFT.

However, even if the Court were inclined to agree with the Debtor's analysis as to whether the Guaranty could lawfully be separated from the Promissory Note, the Debtor has a much bigger problem in this case in advancing the argument that Flagstar does not hold a claim against the Debtor: quite apart from the Guaranty, Flagstar holds the Judgment. The Debtor has advanced no reason why this Court could disregard the Judgment. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to respect the Judgment. Regardless of any legal arguments as to who was entitled to sue to enforce the Guaranty, the simple fact is that the Wayne County Circuit Court has already adjudicated the Debtor's liability *to Flagstar* under the Guaranty by entering the Judgment. The Rooker-Feldman doctrine prevents the Court from reviewing the Judgment. See Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) ("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.") (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). The Judgment has not been appealed and is final. No authority has been cited to this Court that would permit this Court to ignore the fact that

Flagstar holds the Judgment, although it is curious to the Court that Flagstar's proof of claim did not mention the Judgment, and instead recited the basis for the proof of claim as "Breach of Guaranty." The Court overrules the Debtor's objection that Flagstar is not the holder of a claim against the Debtor.[1]

2. <u>What is the allowable amount of Flagstar's proof of claim?</u>

Flagstar filed its proof of claim in the amount of $520,160.20. The Debtor argues that even if Flagstar does hold a claim against him, the amount of the allowable claim is much less than the amount asserted. Although the addendum to Flagstar's proof of claim contains a breakdown of this amount, it does not offer any explanation as to why the amount sought is less than the Judgment amount of $830,303.39. But it is now apparent that when Flagstar prepared the addendum, it gave the Debtor credit against the Judgment for the amount of the purchase price allocated to the Michigan & Lonyo Loan in the AFT Agreement. In its brief, Flagstar has now shifted gears and contends that its proof of claim should be allowed in the full amount of the Judgment and that the Debtor is not entitled to any credit against the Judgment because the Debtor has not made any payments on the Judgment. As a fallback position, Flagstar argues that if the Debtor should get any reduction in the Judgment amount, the Debtor should get at most a credit for the amount paid by AFT to Flagstar for the sale of the Michigan & Lonyo Loan under the AFT Agreement, and not a credit for the amount of AFT's bid at the foreclosure sale. The Debtor counters that the amount paid

---

[1] Because the Court agrees with Flagstar that Michigan law does not prohibit Flagstar from enforcing the Guaranty against the Debtor, the Court need not reach Flagstar's new argument in its brief that the Debtor is estopped from arguing that Flagstar does not hold a claim against the Debtor because the Debtor listed Flagstar's claim in his schedules. For the same reason, the Court need not reach Flagstar's additional new argument that principles of collateral estoppel apply to the Debtor's unsuccessful motion to vacate the Judgment in Wayne County Circuit Court.

by AFT to Flagstar under the AFT Agreement is irrelevant. The Debtor argues that he was not a party to the AFT Agreement and is not bound by any allocation of purchase price or "Maximum Foreclosure Amount" set forth in the AFT Agreement. Instead, the Debtor argues that he is entitled to a credit against the Judgment for the full amount bid by AFT at the foreclosure sale of the Michigan Avenue Property. The Debtor has the better argument.

The Wayne County Circuit Court granted the Judgment adjudicating the Debtor's liability under the Guaranty. Under Michigan law, the cause of action to enforce the Guaranty merged into the Judgment. Union Guardian Trust Co. v. Rood, 13 N.W.2d 248, 249 (Mich. 1944). However, it does not follow that just because the cause of action to enforce the Guaranty merged into the Judgment, the Debtor is not entitled to receive credit for any payments made with respect to the Promissory Note which is the subject of the Guaranty and the Judgment. If Michigan & Lonyo paid the Promissory Note in full, no further amount would be owed on the Guaranty and, therefore, the Debtor would be entitled to a satisfaction of the Judgment. Even Flagstar does not contend that the entry of the Judgment adjudicating the Debtor's liability on the Guaranty somehow entitles Flagstar to a double recovery. In other words, if the Promissory Note signed by Michigan & Lonyo is paid in full, to whoever happens to hold that note, Flagstar is not entitled to a separate, indeed double, recovery from the Debtor on his Guaranty.

When the Debtor signed the Guaranty, he was guarantying payment of a debt secured by a mortgage. The Guaranty expressly recognizes that the holder of the Promissory Note (i.e., Flagstar) was also granted a Mortgage to secure payment of the Promissory Note. Although, under the Guaranty, the Debtor waived the right to require Flagstar to proceed first to enforce the Mortgage securing the Promissory Note, at no time did the Debtor ever waive the right to receive credit on his

-13-

Guaranty for any payments made by Michigan & Lonyo on the Promissory Note, whether such payments were made voluntarily by the maker of the Promissory Note, or involuntarily by foreclosure of the collateral that secured payment of the Promissory Note.

Just as a voluntary payment on the Promissory Note by Michigan & Lonyo would reduce the balance owing on the Promissory Note and the balance owing on the Guaranty, and thereby also reduce the balance owing on the Judgment, similarly, the amount bid at the foreclosure sale of the Michigan Avenue Property is also a payment on the Promissory Note.

> "'[A] sale on statutory foreclosure satisfies the debt secured by the foreclosed mortgage to the extent of the proceeds of the sale.'" New York Life Ins. Co. v. Erb, 276 Mich. 610, 613, 268 N.W. 754, 755 (Mich. 1936) (quoting Moore v. Smith, 95 Mich. 71, 76, 54 N.W. 701, 703 (Mich.1893)). This rule also applies to reduce the amount owed under a guaranty agreement after collateral has been sold at a foreclosure sale. See Crown Life Ins. Co. v. Hicks, No. 93–71482, 1994 U.S. Dist. LEXIS 5562, at *13–14 (E.D. Mich. Jan. 7, 1994) (foreclosure sale of property reduced the indebtedness by the amount paid, partially satisfying guarantors' liability).

8375 Honeytree Blvd. Holdings, LLC v. Starman, No. 11-12431, 2012 WL 683379, at *6 (E.D. Mich. Mar. 2, 2012).

The foreclosure sale bid was a payment on the Promissory Note in the amount of $752,527.40. It is irrelevant whether that payment was made voluntarily or involuntarily. Either way, that payment reduced the balance owing on the Promissory Note and, because the Guaranty promises to pay the Promissory Note, the payment also reduced the balance owing on the Guaranty. If Michigan & Lonyo had tendered $752,527.40 in cash to the holder of the Promissory Note, the Debtor would undoubtedly have gotten credit for such payment on his Guaranty. No reason has been advanced as to why a different result should obtain just because the cause of action on the Guaranty has been reduced to a judgment. To state it another way, the Debtor guaranteed payment

of the Promissory Note.  But he did not guarantee anything more.  He did not promise to pay an amount that exceeds the balance owing on the Promissory Note.  Whether the payments made by Michigan & Lonyo to reduce the balance owing on the Promissory Note were voluntary or involuntary, the Debtor gets the credit for the amount of the payments against his outstanding liability under the Guaranty, and against his outstanding liability for the Judgment.

To be fair, Flagstar does not argue that a guarantor should not ordinarily get credit for payments made on the guaranteed promissory note, whether such payments are voluntarily made by the maker of the note or are involuntarily made by foreclosure of the collateral that secures the promissory note.  Instead, Flagstar argues that on the somewhat unusual facts of this case, the Debtor is not entitled to credit for the amount bid at the foreclosure sale of the Michigan Avenue Property.  Specifically, Flagstar argues that *it* did not receive the $752,527.40 payment that was made by the bid at the foreclosure sale.  According to Flagstar, the proceeds of that payment were received instead by AFT.  Flagstar then points out that the only proceeds that *it* has ever received on the Promissory Note were the proceeds from AFT in the allocation of the purchase price to the Michigan & Lonyo Loan under the AFT Agreement.  In other words, Flagstar did not receive $752,527.40, but instead received only $268,917.01 from AFT.  Flagstar misses the point.  The $268,917.01 that Flagstar received from AFT under the AFT Agreement was not a payment made for application to the Promissory Note.  That payment had no effect on the balance owing on the Promissory Note or on the Debtor's liability under the Guaranty.  Instead, the $268,917.01 was a payment made by AFT to Flagstar for the sale by Flagstar to AFT of a bundle of rights including the right to enforce the Promissory Note.  A payment made in exchange for the right to enforce the Promissory Note is simply not the same thing as a payment made on the Promissory Note itself, and

-15-

does not have the effect of reducing the balance owing by the maker of the Promissory Note. In contrast, there was a payment made on the Promissory Note when the foreclosure sale took place and the high bid was $752,527.40. Flagstar's argument conflates these two payments, one of which was made by AFT to acquire the right to enforce the Promissory Note, and the other of which was made for application to the balance owing on the Promissory Note. If Flagstar did not receive any proceeds from the foreclosure sale of the Michigan Avenue Property, and therefore did not receive the $752,527.40 payment on the Promissory Note, it is through no fault of the Debtor. It is because Flagstar chose to sell to AFT the right to receive payments on the Promissory Note. The return that Flagstar realized on the sale of that right is irrelevant to this analysis. The holder of the Promissory Note made by Michigan & Lonyo, AFT, received a payment of $752,527.40 upon the foreclosure sale of the Michigan Avenue Property. That sum reduced the balance owing on the Promissory Note and, therefore, also reduced the amount owing by the Debtor on his Guaranty of the Promissory Note, and the balance owing on the Judgment.

Flagstar seeks to avoid this result by next arguing that AFT somehow overbid at the foreclosure sale in an amount that exceeded the "Maximum Foreclosure Amount" that AFT had agreed to bid in the AFT Agreement. If that is true, then Flagstar may have a breach of contract cause of action against AFT. But that cause of action does not alter the fact that AFT reduced the balance owing on the Promissory Note by $752,527.40 when it bid that amount at the foreclosure sale of the Mortgage, and thus reduced the amount owed under the Guaranty. Flagstar's problem is with AFT, not with the Debtor. Flagstar put itself in this position by relinquishing the right to enforce the Promissory Note and Mortgage and thereby placing into AFT's hands the decision as to how much to bid at the foreclosure sale of the Michigan Avenue Property.

Flagstar makes one final argument. Although mentioned only in passing in Flagstar's brief, Flagstar emphasized to the Court at the hearing that a recent Michigan Court of Appeals decision strongly supports Flagstar's assertion that it is entitled to a claim for the full amount of the Judgment, unreduced by the amount of the bid at the foreclosure sale of the Michigan Avenue Property. The case cited by Flagstar is Greenville Lafayette, LLC v. Elgin State Bank, ___ N.W.2d ___, 2012 WL 1319417 (Mich. Ct. App. Apr. 17, 2012). The crux of this argument is that the analysis in Greenville Lafayette would have permitted Michigan & Lonyo to challenge the foreclosure sale conducted by AFT as unlawful under Michigan law. Although Michigan & Lonyo raised no such challenge, and is not in any event a party to the proceedings before this Court, Flagstar argues that the availability to Michigan & Lonyo of such an argument requires this Court to disregard the foreclosure sale of the Michigan Avenue Property for purposes of determining the allowable amount of Flagstar's claim against the Debtor.

In Greenville Lafayette, there was a $1.8 million loan made to a limited liability company, secured by real property. The promissory note was partially guaranteed by two individual guaranties. After the promissory note matured, the bank brought an action to collect on the guaranties. While the action was pending, the bank then began foreclosure proceedings on the property securing the promissory note. The limited liability company that made the promissory note and owned the property sought to enjoin the foreclosure sale, arguing that the bank's decision to proceed with the lawsuit against the guarantors precluded the bank from foreclosing on the property securing the promissory note. The limited liability company argued that Mich. Comp. Laws Ann. § 600.3204(1)(b) barred the bank from foreclosing on the property because of the action that the bank had already commenced against the guarantors. The court stated that the outcome in that case

-17-

turned on whether the bank's action against the guarantors was an action to recover "the debt secured by the mortgage." If so, the mortgage foreclosure could not proceed. If not, the mortgage foreclosure could proceed. The Michigan Court of Appeals explained that a guaranty is ordinarily a separate obligation from the promissory note that its guarantees. However, because of the manner in which the mortgage and the guaranties defined "indebtedness" in the case before it, the Michigan Court of Appeals concluded that the mortgage in that case did not just include the promissory note within the definition of "indebtedness," but specifically defined the guaranties as part of the "indebtedness" secured by the mortgage. As a result, the Michigan Court of Appeals held that the one action rule bar of Mich. Comp. Laws Ann. § 600.3204(1)(b) did apply in the facts of that case. But that case does not help Flagstar.

First, the Michigan Court of Appeals decision in <u>Greenville Lafayette</u> turned entirely on the court's construction of the language in the particular documents before it, which defined "indebtedness" in such a way as to persuade the Michigan Court of Appeals that the "indebtedness" secured by the mortgage also meant the promises contained in the guaranties as well as the promise contained in the promissory note itself. There is no argument in the case before this Court that the Michigan & Lonyo Loan documents, Promissory Note, Mortgage or Guaranty somehow define the "Indebtedness" described in the Mortgage as including the promise contained in the Guaranty given by the Debtor.

Aside from the fact that <u>Greenville Lafayette</u> is factually inapposite because of the specific language in the documents before that court, there are other reasons why it is inapplicable to the case before this Court. The holding of <u>Greenville Lafayette</u> is that the limited liability company that owned the property subject to the mortgage was entitled to enjoin the bank from foreclosing on the

-18-

mortgage because of the application of the one action bar of Mich. Comp. Laws Ann. § 600.3204(1)(b) to the specific contractual language in that case. The guarantors in <u>Greenville Lafayette</u> were not seeking any relief, but rather it was the owner of the property who was seeking to stop the foreclosure sale. Here, we have the reverse. Michigan & Lonyo is the owner of the Michigan Avenue Property. Even if the language in the Michigan & Lonyo Loan documents and the Guaranty in this case was similar to the language in the documents in <u>Greenville Lafayette</u> (which it is not), at most that might have entitled Michigan & Lonyo to have brought an action to stop the foreclosure sale by AFT on the Michigan Avenue Property before that sale took place. But Michigan & Lonyo did not bring any such action, and the foreclosure sale proceeded to conclusion. Flagstar is essentially arguing that this Court should now disregard the foreclosure sale of the Michigan Avenue Property, pretend that it didn't happen, and not reduce the balance owing by the Debtor by the amount paid on the Promissory Note by reason of that foreclosure sale, based solely on Flagstar's theory that Michigan & Lonyo *could have* used the <u>Greenville Lafayette</u> analysis to try to stop the foreclosure sale conducted by AFT. That is too much of a stretch.

<u>Greenville Lafayette</u> is factually distinguishable and legally irrelevant because Michigan & Lonyo is not before this Court and the Debtor is not arguing that the foreclosure sale should have been stopped. Quite the contrary. The Debtor here is arguing that he is entitled to a reduction in his liability on the Guaranty, now evidenced by the Judgment, for the amount paid at the foreclosure sale. Far from wanting to set aside the foreclosure sale, the Debtor simply wants the Court to credit

him for the payment made at the foreclosure sale, which is what he bargained for when he signed the Guaranty of the Promissory Note. Flagstar's reliance on <u>Greenville Lafayette</u> is misplaced.[2]

C<small>ONCLUSION</small>

For whatever reason, Flagstar structured a transaction with AFT that expressly separated the Guaranty from the Michigan & Lonyo Promissory Note and Mortgage. No authority has been brought to the Court by any party to show that this structure, although perhaps unusual, was unlawful. But that structure did not change the fundamental nature of the Debtor's Guaranty or expand his liability under the Guaranty. He guaranteed payment of the Promissory Note. After sorting through all of the facts in this case, the analysis is relatively simple. The Promissory Note was secured by the Mortgage on the Michigan Avenue Property. When that property was sold at a foreclosure sale on July 27, 2011, the sale price constituted a payment on the Promissory Note. The Debtor was entitled to a full credit on his Guaranty for the amount of that payment on the Promissory Note. The fact that Flagstar had previously assigned the Promissory Note to a third party does not change that result. Nor does Flagstar's contention that Michigan & Lonyo could arguably have challenged the foreclosure sale under Michigan law. The payment of the foreclosure sale proceeds of $752,527.40 reduced the balance owed on the Promissory Note, reduced the balance owed by the Debtor on the Guaranty, and reduced the balance owed on the Judgment, by a like amount.

----

[2] Even if Michigan & Lonyo had raised the same challenge as the property owner in <u>Greenville Lafayette</u> its likelihood of success was doubtful. This is because, at the time of the foreclosure sale in this case, the only pending action was on the Guaranty, not the Promissory Note. <u>See</u> <u>United States v. Leslie</u>, 421 F.2d 763, 766 (6th Cir. 1970) (allowing a creditor to proceed with its foreclosure action against the property the day after it sued the defendants as guarantors, finding that Mich. Comp. Laws Ann. § 600.3204 "was not enacted to protect guarantors of a note").

-20-

The Court sustains in part and denies in part the Debtor's objection to Flagstar's proof of claim (docket entry no. 33). The Court concludes that the proof of claim filed by Flagstar should not be entirely disallowed, but the amount of the proof of claim that is allowable is the Judgment amount less the amount bid at the foreclosure sale. Counsel for the Debtor shall prepare an appropriate order allowing such proof of claim in this reduced amount and have it approved for entry by counsel for Flagstar within 14 days from the date of this opinion.

.

Signed on May 29, 2012

                              /s/ Phillip J. Shefferly
                         Phillip J. Shefferly
                         United States Bankruptcy Judge